## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Sydney Dillard | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-7760 |
| DePaul University, | Plaintiff Demands Trial by Jury |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff Sydney Dillard ("Dillard" or "Plaintiff"), by and through her attorneys, Gianna R. Scatchell, Esq. and NaVarrio Wilkerson, Esq. of DISPARTI LAW GROUP, P.A., states and alleges as follows for her Second Amended Complaint against DePaul University ("DePaul" or "University") and alleges upon personal knowledge regarding himself and his own acts, and on belief, regarding all other matters:

## INTRODUCTION

1.  This is an action for race and disability discrimination pursuant to Title VII of the Civil Rights Act of 1964— 42 U.S.C. § 2000d (race discrimination), 42 U.S.C. §2000d (hostile work environment), the Americans with Disability Act of 1990, and Federal Equal Pay Act.

2.  Plaintiff sues to enforce her federal and state law rights arising out of the Defendants' unlawful race and disability discrimination. Plaintiff seeks all remedies including lost wages and benefits, compensatory damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over DePaul because it committed the acts and omissions that are the subject of this litigation in Cook County, Illinois, which is in this district.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such claim is so related to the federal claims in this action that it forms part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over DePaul because, at all times relevant, DePaul has been headquartered in this judicial district, maintains offices in this judicial district, and conducts its principal business and operations in this judicial district.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that DePaul's principal place of business and operation is in this judicial district, DePaul engaged in the unlawful employment practices in this judicial district, and all of the events or omissions giving rise to the claims occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

7. Plaintiff filed a charge of Discrimination against Defendant with the EEOC (Charge No. 440-2019-06844). A true and accurate copy of Plaintiff's Right to Sue letter is attached as Ex. 1.

8. Plaintiff commences this lawsuit within the 90-day period the EEOC right-to-sue notice.

## PARTIES

9. Plaintiff, Sydney Dillard ("Dillard" or "Plaintiff") is an African American woman. She is a tenured Associate professor at DePaul University College, which is located in Chicago (Cook County), Illinois.

10. Defendant, DePaul University ("DePaul" or the "University") is a not–for–profit corporation and is the largest Catholic university in the United States. DePaul's principal place of business is in Chicago (Cook County), Illinois.

## FACTS RELEVANT TO ALL COUNTS

2

11. During her time at DePaul, Dillard was considered by her peers to be an accomplished and competent professional.

12. Plaintiff is the only African American female that is a tenured-tracked faculty member in the College of Communication.

13. To build a successful career in academia, faculty members are expected to excel in a number of areas including research, teaching, leadership, and service.

14. These factors are the basis for any promotion as a DePaul professor.

15. At DePaul, tenure-track faculty members are expected to spread their time between these categories.

16. While at DePaul, Plaintiff was not provided the same opportunities as other non-minority or non-disabled tenure-track faculty members were provided, which will continue to impact her future career in higher education.

17. Prior to DePaul's discriminatory conduct, Plaintiff performed her job duties satisfactorily. She was never written up and generally received positive feedback from her supervisors about her work.

18. While working for DePaul, Plaintiff was subjected to an ongoing hostile work environment in the following ways:

   a. Plaintiff was subject to a six-year probationary period before she could obtain tenure status, which is longer than non-minority or non-disabled tenure-track professors;

   b. Plaintiff was belittled, ostracized, and intimidated through microaggressions, causing her unnecessary stress, which negatively affected her ability to work;

   c. Plaintiff was singled out and subject to random and invasive office searches;

    **d.** Plaintiff was forced to teach in person classes versus online instruction where she had lower scores. Carolyn Bronstein, the Associate Dean in the College of Communication, informed Plaintiff that no other faculty member was forced to teach one modality over another because of a personnel review.

    **e.** DePaul's EEO Office ignored Plaintiff's complaints of discrimination, thereby forcing her to continue to work in a hostile work environment and furthering the delay of her tenure appointment.

<u>**Plaintiff is Subject to Increased Scrutiny**</u>

**19.** Plaintiff's tenure-track evaluations were replete with irregularities and increased scrutiny.

**20.** For example, Plaintiff was subjected to at least five (5) formal reviews[1] before she could become tenured and promoted unlike her non-minority and non-disabled peers.

**21.** Each formal review caused Plaintiff to expend a significant amount of time to prepare including time to organize materials, draft written personal statements, organize her materials, update her files, and be subjected to a formal interview.

**22.** Each time Plaintiff was reviewed it was substantially equivalent to being on a one-year probation because the Dean of the College of Communication agrees to only one additional year of employment.

**23.** On belief, Plaintiff is the only tenure-track faculty member in the College of Communication to undergo this many formal reviews.

**24.** The average faculty member has approximately three formal reviews before becoming tenured and promoted.

---

[1] Plaintiff's formal reviews occurred on or about November 9, 2013, March 23, 2015, March 3, 2017, March 9, 2018, November 16, 2018.

**25.** In addition, while working for Defendant, Plaintiff was either thwarted or prevented from advancing to a tenured position, in one or more of the following ways:

    **a.** Non-African American employees similarly situated to Plaintiff were given one on one assistance and coaching regarding their performance on the path to, obtaining tenure, and Plaintiff was not.

    **b.** Non-African American employees were subjected to less stringent evaluations than Plaintiff.

    **c.** Plaintiff was required to teach more face-to-face instruction than any other employee in the College of Communication. This requirement prevented Plaintiff from putting her time into research, which is a category that an employee like Plaintiff would be judged on in the tenure process.

    **d.** Plaintiff was admonished for low scores, while other non-African American employees with lower scores were not admonished.

    **e.** Plaintiff was not given the opportunity to chair search committees,[2] which would have demonstrated her level of service to a committee, criteria for tenure. Instead, Plaintiff was made to co-chair the committee with a less qualified, male employee.

    **f.** One of Plaintiff's non-minority and non-disabled male colleagues served as the chair to several search committees, which allowed him to gain leadership experience and ultimately lead to his promotion.

---

[2] The CMC promotion criteria states that "[a] record of extraordinary service can be determined when a candidate provides extensive service contributions both within and outside the College and is seen as a leader in service initiatives (such as building new degree programs, chairing numerous search committees, taking on administrative roles, and/or expanding student opportunities."

**g.** Plaintiff was singled out and reviewed on her use of DePaul's "SharePoint" system even though the criteria for using it kept changing and even though SharePoint was not a requirement for class instruction.

**h.** DePaul's EEO Office ignored Plaintiff's complaints of discrimination, thereby forcing her to continue to work in a racially hostile work environment.

**i.** In February 2019, DePaul failed to promote Plaintiff to Program Chair of the Public Relations and Advertising Program, despite the fact that she was qualified (she is a Ph.D. and had one year of leadership training) when she was the only candidate for the position.

### Plaintiff Receives Less Pay than her Non-Minority Peers

26. Also, Plaintiff was paid lower wages than other non-African American Assistant Professors, with less experience.

27. On or about November 2, 2018, Plaintiff put DePaul on notice that she was being paid less than her counterparts or other less experienced professors and made an oral demand to be provided with retroactive pay.

28. As a result of DePaul's conduct alleged herein, Plaintiff began suffering from debilitating medical conditions, including, but not limited to an aggravated seizure disorder, anxiety, and depression, all affecting her ability to work. Plaintiff went on a short-term disability leave and sought medical accommodations because of the stress she endured because of the hostile treatment.

29. Similarly situated, non-African American employees were treated more favorably than Plaintiff, as they were not subjected to the conduct set forth herein.

6

30. As a result of DePaul's actions Plaintiff suffered lost wages and benefits, delayed career advancement, emotional distress damages, and attorney's fees.

### Race Discrimination/Harassment/Hostile Work Environment

31. While working for DePaul, Plaintiff was subjected to an ongoing hostile work environment based on her race in the following ways:

   a. Non-minority employees similarly situated to Plaintiff were given one-on-one assistance and coaching regarding their performance on the path to obtaining tenure, and Plaintiff was not.

   b. Non-minority employees were subjected to less stringent evaluations than Plaintiff, allowing them to obtain tenure sooner than Plaintiff.

   c. Plaintiff was required to teach more face-to-face instruction than any non-minority employee in the College of Communication.

   d. Plaintiff was admonished for low scores, while non-minority employees with lower scores were not admonished.

   e. Plaintiff requested to be chair of a search committee on one occasion, which would have demonstrated her level of service to a committee and criteria for tenure. Instead, Plaintiff was forced to co-chair the committee with a non-qualified employee.

   f. DePaul's EEO Office ignored Plaintiff's complaints of discrimination, thereby forcing her to continue to work in a racially hostile work environment.

   g. Plaintiff was singled out and reviewed on her use DePaul's "SharePoint" system, which was not a requirement for class instruction.

### Disability Discrimination

**32.** Plaintiff is qualified individual with a disability under the ADA.

**33.** Plaintiff has a seizure disorder, which causes her to lose consciousness and substantially limits her in her ability to walk, talk, think, communicate, concentrate, and work, when activated.

**34.** Plaintiff also has clinical anxiety and depression, which substantially limits her in her ability to sleep, see, think, communicate, concentrate, and work.

**35.** Prior to DePaul's discriminatory conduct, Plaintiff performed her job duties satisfactorily with or without reasonable accommodation. She was not written up or counseled regarding her performance.

**36.** While working for DePaul, Plaintiff was discriminated against based on her disability in the following ways:

    **a.** DePaul delayed or failed to provide pertinent information to third parties regarding Plaintiff's application for short-term disability, which resulted in Plaintiff's denial of short-term disability.

    **b.** Other, non-African American colleagues on short-term disability were provided with additional faculty support such as other professors taking over classes, substituting that professor's service responsibilities, food trains[3] of colleagues bringing him and his wife meals.

    **c.** Plaintiff, by contrast, was not provided any support and her colleague, Maria DeMoya, offered to take over teaching Plaintiff's classes, but was denied.

    **d.** DePaul encouraged Plaintiff to stop her tenure clock.

    **e.** DePaul unreasonably delayed the confirmation of Plaintiff's teaching scheduled for Fall 2018, Spring 2019, Winter 2019, causing Plaintiff a more onerous workload.

---

[3] Colleagues who schedule and organize home-made meal giving for other people.

    **f.**  DePaul failed to protect Plaintiff's private medical information from other employees.

    **g.**  DePaul attempted to coerce Plaintiff into not teaching classes, an action that would cause Plaintiff to lose wages.

    **h.**  DePaul attempted to force Plaintiff to work beyond the limitations set forth by her physician.

**37.** During the weeks of September 24, 2018, October 1, 2018, October 8, 2018, and October 15, 2018, Plaintiff experienced dizziness, light-headedness, blurred vision, double vision, and migraines while teaching her face-to-face classes.

**38.** Plaintiff put DePaul on notice after each of these flare-ups by telling her supervisor.

**39.** On or about November 11, 2018, Defendant denied Plaintiff's request for accommodation to teach online courses and have more time to prepare her courses despite knowing that Plaintiff had experienced seizure triggers several times during her face-to-face classes.

**40.** On or about December 6, 2018, DePaul suggested that Plaintiff not teach winter intersession or summer courses, which denied Plaintiff the opportunity for overtime.

<b><u>Failure to Accommodate</u></b>

**41.** Plaintiff is a qualified individual with a disability under the ADA.

**42.** Plaintiff has a seizure disorder, which causes her to lose consciousness and substantially limits her in her ability to walk, talk, think, communicate, concentrate, and work, when activated.

**43.** Plaintiff also has clinical anxiety and depression, which substantially limits her in her ability to sleep, see, think, communicate, concentrate, and work.

44. DePaul is aware of Plaintiff's limitations through Plaintiff's applications for short-term disability, her verbal accommodations requests, complaints to EEO, and accommodations requests by her physician, including in October 2018 through at least March 7, 2019.

45. During this same time period, Plaintiff made multiple requests for reasonable accommodations—namely, additional time to prepare for her classes, and to teach her classes online for each session, as opposed to face to face for the Fall and Winter quarters 2018.

46. Plaintiff was not given additional time to prepare for her classes for the Fall and Winter 2019, which began September 2018 – January 2019.

47. Plaintiff was also required to teach face to face classes each session for the Fall and Winter 2019, which began September 2018 – January 2019.

48. Plaintiff explained that teaching face to face classes exacerbated her medical condition.

49. Teaching in person was contrary to her neurologist's recommendation.

50. Consequently, Plaintiff's doctor increased her medication dosages to prevent her from having seizures, which were intensified by being forced to teach face-to-face classes with her current workload.

51. Plaintiff requested, and was denied, the ability to have more time to prepare for her courses, which caused her research thesis requirements to suffer.

52. Plaintiff's request for reasonable accommodation would not result in undue hardship to Defendant.

## **Denial of promotion**

53. A Caucasian, male colleague told Plaintiff that Jim Motzer, a Caucasian male, would be a better candidate for the Program Chair position than Plaintiff, even though Motzer was not qualified for the position because he is not tenure or a tenure-track faculty member.

54. Without explanation, Dillard was not awarded the Program Chair even though she was qualified and was the *only* candidate for the position.

55. On or about February 21, 2019, Plaintiff was further informed that there were no negative discussions about her qualifications for the position.

56. However, during the vote for Plaintiff to be promoted, several faculty members informed Plaintiff that they did not consider her presentation, leadership plan, or the answers to the questions and answers part of the meeting.

57. Instead, many of the players involved in the promotion process made direct statements in and around the hiring process by expressing their concerns about Plaintiff's disability, which included discussing her recent medical history, disability, and maternity leave.

58. Other faculty members confirmed that her disability and maternity leave were cited as the reasons why she was not promoted to Program Chair.

59. This denial was a major setback for Plaintiff's career advancement toward being selected to become a full professor or an administrator such as Associate Dean or Dean because she was not able to demonstrate her leadership skills and display competency in an administrative capacity. and eventually moving into higher administrative positions

### DePaul's Double Standard in Tenure-Selecting Procedures

60. On or about November 13, 2020, Plaintiff attended the tenure-faculty meeting to vote on the promotion of Kendra Knight ("Knight"), a Caucasian woman.

61. Inexplicably, DePaul conducted four (4) separate votes until the votes were unanimously in favor of Knight receiving a promotion because the faculty members involved did not want Knight to "think that she has enemies" and "there was no negative discussion about her qualifications."

11

62. This unprecedented 4-time voting process violated DePaul's Faculty Handbook, § 3.5.2 which states in summary below, and more fully as Exhibit 2:

*Likewise, no faculty member is permitted to add his or her vote or change his or her vote after votes have been tallied.*

63. Plaintiff, by comparison, was not afforded numerous revotes when her peers voted on whether she should be promoted.

64. On or about November 15, 2020, DePaul's Personnel Committee asked for faculty input regarding the meeting surrounding Knight's promotion. This personnel document stated that during the meeting for Knight's promotion, there were only two votes that occurred because a) one of the votes suffered from a technical glitch or b) there had not been an abstain option in the voting poll.

65. On or about December 15, 2020, Paul Booth, the chair of DePaul's Personnel Committee requested that Plaintiff submit a signed statement attesting to the accuracy of the form regarding Knight's promotion.

66. Plaintiff refused to sign Knight's personnel document because it was inaccurate. Plaintiff further noted on the form that there were four separate votes instead of two and that Plaintiff did not feel comfortable signing a statement that the document was accurate.

### DePaul's History of Racially Discriminatory Conduct.

67. In 2012, when Plaintiff began teaching at DePaul's College of Communications, there was only one (1) tenured minority professor and four (4) minority professors that were on the tenured track.

68. On belief, Plaintiff is now the last of the minority professors left at the College of Communications.

69. On further belief, two of the four minority professors were denied tenure and promotion and one of the minority professors was harassed and discriminated against and left DePaul.

70. On or about November 2, 2018, Nur Urysal, a non-minority assistant professor tried to disqualify another candidate for having a foreign accent.

71. On or about September 2019, and on belief, Latrina West-Shields, left her position at DePaul due to several complaints for racial discrimination.

72. Separate and apart from DePaul's racially discriminatory acts against Dillard as specified herein, DePaul has been sued at least four separate times for violations of civil rights including the following lawsuits: *Terry Smith v. DePaul University*, *Sumi Cho v. DePaul University*, 1:18-cv-08012, and *Lisa Calvente v. DePaul University*, 1:20-cv-03366.

## COUNT I – Intentional Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

73. Plaintiff restates, realleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.

74. Title VII of the Civil Rights Act of 1964 provides that "[it] shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . ." 42 U.S.C. 2000e-2(a)(1).

75. At all times, Defendant DePaul was motivated by racially discriminatory animus in its aforesaid actions, *to wit*, it intentionally discriminated against Plaintiff based on her race (African American).

76. At all times, Plaintiff met the legitimate expectations of her position and performed her job satisfactorily.

77. At all times, Plaintiff was fully qualified and the only candidate for the Program Chair position for which she applied.

78. A similarly situated Caucasian individual was less qualified for the full-time tenure position for which Plaintiff applied.

79. Defendant DePaul at no time gave a reason for Plaintiff's non-selection for the position or the increased scrutiny for tenure track.

80. Any reason that DePaul could give for Plaintiff's non-selection or more scrutinized selection process is a pretext for race discrimination based upon at least (i) direct statements referencing diversity surrounding the Program Chair promotion and also of full-time tenure position hiring process; (ii) irregularities in the process utilized during the full-time tenure position hiring process; (iii) Plaintiff's superior qualifications for both; and, (iv) rampant disparate treatment of non-Caucasian faculty vis-a-vis Caucasian staff persons in the timeframe surrounding the  hiring of the full-time tenure track position and Program Chair promotion.

81. At all times, the adverse actions taken by Defendant DePaul against Plaintiff was because of her membership in a protected group, *to wit*, that she identifies as African American.

82. The employment practices in which DePaul has engaged were intentional.

83. The employment practices in which DePaul has engaged were done with malice or reckless indifference to Plaintiff's rights.

84. That, as a result of Defendant DePaul' intentional race discrimination, Plaintiff has suffered damages, the failure to hire/promote her to the Program Chair position, increased requirements/scrutiny to be considered for the full-time tenure position, loss of salary and benefits (to include pay, retirement, insurance, and all other benefits and emoluments of employment), and substantial emotional distress

14

85. As a direct and proximate cause of Defendant's actions, Plaintiff has endured substantial emotional distress including feelings of hopelessness, reputational damage, loss of enjoyment of life, embarrassment, anxiety, restlessness, and depression. Plaintiff's increased stress led to physical pain and suffering including developing a seizure disorder, ocular migraines, double vision, light sensitivity, difficulty multi-tasking, loss of consortium, dislocated shoulders and a chipped bone from seizures. Plaintiff has spent two years in both physical and psychotherapy to relearn how to focus on reading and multitasking without developing additional fatigue and is indefinitely on anti-seizure medication.

86. As a further direct and proximate result of Defendant's actions, Plaintiff suffered financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court enter Judgment in her favor, and against Defendant DePaul, and order Plaintiff made whole for all losses as a result of Defendant's unlawful discriminatory actions complained of herein, loss of pay and benefits, lost bonuses and raises, compensatory damages, and reasonable attorneys' fees and costs. Plaintiff additionally requests that this Court enter an order for such other relief as it deems just and proper.

## COUNT II – Hostile Work Environment Based on Race in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

87. Plaintiff restates, realleges and incorporates by reference all other Paragraphs of this Compliant as if fully stated therein.

88. The Defendant subjected the Plaintiff to a series of acts that collectively constitute unlawful employment practice.

89. Defendant's acts were viewed as subjectively hostile and abusive by the Plaintiff and would be viewed as objectively hostile and abusive to a reasonable person.

90. At all times, Defendant DePaul was motivated by racially discriminatory animus in its aforesaid acts, to wit, it discriminated against Plaintiff based on her race (African American).

91. The Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of the Plaintiff.

92. The Defendant discriminated against the Plaintiff on the basis of race in violation of Title VII, 42 U.S.C. § 2000d.

93. As a direct and proximate cause of Defendant's actions, Plaintiff has endured substantial emotional distress including feelings of hopelessness, reputational damage, loss of enjoyment of life, embarrassment, anxiety, restlessness, and depression. Plaintiff's increased stress led to physical pain and suffering including developing a seizure disorder, ocular migraines, double vision, light sensitivity, difficulty multi-tasking, loss of consortium, dislocated shoulders and a chipped bone from seizures. Plaintiff has spent two years in both physical and psychotherapy to relearn how to focus on reading and multitasking without developing additional fatigue and is indefinitely on anti-seizure medication.

94. As a further direct and proximate result of Defendant's actions, Plaintiff suffered financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court enter Judgment in her favor, and against Defendant DePaul, and order Plaintiff made whole for all losses as a result of Defendant's unlawful discriminatory actions complained of herein, backpay, front pay, loss of pay and benefits, lost bonuses and raises, compensatory damages, and reasonable attorneys' fees and costs. Plaintiff additionally requests that this Court enter an order for such other relief as it deems just and proper.

## COUNT III – Disability Discrimination in Violation of the Americans with Disabilities Act of 1990.

95. Plaintiff restates, realleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.

96. Plaintiff is a member of a protected and suspect classification: a person with a disability.

97. As outlined in the preceding paragraphs, Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111(8) because she can, with reasonable accommodation, perform the true essential functions of the job that she held and seeks to hold in the employ of the Defendant.

98. During Plaintiff's employment, Defendant was on notice and at all times knew of Plaintiff's ADA-recognized disabilities.

99. Specifically, the Defendant violated the ADA in at least the following ways: it failed to engage in the required interactive process; scrutinized her work performance more harshly than other employees without disabilities; degraded and humiliated her in front of her peers; subjected Plaintiff to a hostile work environment not imposed upon non-disabled persons; exacerbated Plaintiff's anxiety; and caused Plaintiff emotional distress.

100. At all times, Defendant, developed a separate set of guidelines that were a pretext to subjecting Plaintiff to heightened scrutiny and denying her the promotion to Program Chair.

101.   The discriminatory action of Defendant as set forth above, has caused and will continue to cause Plaintiff to suffer losses of earnings.

102.   As a further proximate result of Defendant's unlawful and intentional discriminatory practices engaged in by the Defendant in violation of the ADA, Plaintiff has suffered damages, the failure to hire/promote her to the Program Chair position, increased requirements/scrutiny to be considered for the full-time tenure position, loss of salary and benefits (to include pay, retirement, insurance, and all other benefits and emoluments of employment), and substantial emotional distress in the form of anxiety, depression, embarrassment, reputational damage, and emotional pain and suffering.

103.   As a direct and proximate result of Defendant's actions, Plaintiff suffered financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, court costs, and other damages allowable under the ADA.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court enter Judgment in her favor, and against Defendant DePaul, and order Plaintiff made whole for all losses as a result of Defendant's unlawful discriminatory actions complained of herein, loss of pay and benefits, lost bonuses and raises, compensatory damages, and reasonable attorneys' fees and costs. Plaintiff additionally requests that this Court enter an order for such other relief as it deems just and proper.

### COUNT IV – Federal Equal Pay Act – 29 U.S.C. § 206, et seq.

104.   Plaintiff restates, realleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.

105.   DePaul has willfully violated the Equal Pay Act by paying Plaintiff wages at a rate less than the rate at which it pays similarly situated male professors.

106.   DePaul knowingly violated the Equal Pay Act or was indifferent to that possibility of such violation by paying Plaintiff wages at a rate less than the rate at which it pays similarly situated male professors.

107.   At all times relevant to this complaint, Plaintiff has performed work that is and was substantially similar to that of male professors at the Communications College considering the skills, effort, and responsibilities of the job. Similarly, Plaintiff has worked under conditions similar to male professors.

108.   DePaul has paid Plaintiff at a lower rate than male professors.

109.   When DePaul provided an unexplained 2.9% raise, which was not retroactively applied for at least three years prior, in which Plaintiff was being paid less than Plaintiff's counterparts and less-experienced professors.

110.   Upon information and belief, DePaul continued to pay Plaintiff at a lower rate than male professors at least as of January of 2019, and knowingly continued to do so.

111.   As a result of the acts complained of above, DePaul has unlawfully withheld and is continuing to withhold the payment of wages due to Plaintiff.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Honorable Court enter Judgment in her favor, and against Defendant DePaul, and order Plaintiff made whole for her loss in pay and be afforded reasonable attorneys' fees and costs. Plaintiff additionally requests that this Court enter an order for such other relief as it deems just and proper.

### COMMON PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Sydney Dillard, prays that the Court grant the following relief:

**a)** Conduct a mediated settlement conference or to refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

**b)** Award punitive damages in an amount sufficient to punish DePaul and to deter others from engaging in similar conduct;

**c)** Award Plaintiff for her past and future loss of wages and benefits, plus interest;

**d)** Award Plaintiff actual and compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendant DePaul's conduct;

**e)** Award Plaintiff prejudgment interest;

**f)** Award Plaintiff reasonable attorneys' fees and costs;

**g)** All other relief as the interests of justice require.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

**Sydney Dillard**

*/s/ Gianna R. Scatchell*
*/s/ NaVarrio Wilkerson*

By:_____
     Gianna R. Scatchell, Esq.
     NaVarrio Wilkerson, Esq.
     Her Attorneys

*Gianna R. Scatchell, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com

*NaVarrio Wilkerson, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300

Chicago, Illinois 60601
P: (312) 506-5511 ext. 336
F: (312) 846-6363
E: navarrio@dispartilaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 7th day of April 2021, a true and correct

copy of the foregoing PLAINTIFF'S SECOND AMENDED COMPLAINT was electronically

filed with the Clerk of the Court using CM/ECF, which will send electronic notification of such

filing to the following:

Anna Wermuth
Danielle Harris
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
P: 312-474-7876
awermuth@cozen.com
danielleharris@cozen.com
*Counsel for Defendants*

/s Gianna Scatchell

Gianna Scatchell